UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DOMINICK RANIERI d/b/a DOMINICK
RANIERI ARCHITECT, P.C.,

                  Plaintiff,      **COMPLAINT WITH DEMAND**
                                          **FOR JURY TRIAL**

       -against –

ADIRONDACK DEVELOPMENT GROUP, LLC;    Civil Action No.:
HODOROWSKI HOMES, LLC;
J. LUK CONSTRUCTION CO., LLC;        1:11-CV-1013 (GTS/DRH)
COLDWELL BANKER PRIME PROPERTIES, INC.;
PRIME COMPANIES, LLC;
PARAGON PRIME FUNDING;
PRIME LAND DEVELOPMENT, LLC;
CAPITAL CLOSING SERVICES, LLC;
FRANCIS J. HODOROWSKI, SR.;
FRANCIS J. "LUKE" HODOROWSKI, JR.;
KENNETH RAYMOND, JR.;
NORTHSTAR HOME DESIGNS, LLC.;
CREATIVE CONCEPTS HOME PLAN SERVICES, LLC;
JOHN KAZMIERCZAK;
PAUL HODOROWSKI; and
STEPHEN EDWARD LAMB ,

                      Defendants.

    Plaintiff, Dominick John Ranieri and Dominick Ranieri Architect, PC., (hereinafter "Ranieri") by and through his attorneys Thorn Gershon Tymann and Bonanni, LLP, as and for a complaint against the defendants hereby allege the following:

## Parties

    1.   Plaintiff Dominick John Ranieri is a licensed architect in the state of New York and is the President and sole practitioner of his Architectural firm known as Dominick Ranieri Architect, P.C. and his office and principal place of business is located at 10 New Karner Road, Suite 101, Guilderland, New

York. Ranieri is in the business of designing residential, commercial, and multi-family buildings.

2.   Upon information and belief, defendant Adirondack Development Group, LLC. (hereinafter "Adirondack") was and is a domestic corporation authorized to do business pursuant to the Laws of the State of New York with offices and principal place of business at 864 Burdeck Street, Schenectady, New York. Adirondack is and was engaged in the real estate development and building business.

3.   Upon information and belief, defendant J. Luk Construction Co., LLC., (hereinafter "J. Luk") was and is a domestic corporation authorized to do business pursuant to the Laws of the State of New York with a mailing address at 796 Burdeck Street, Schenectady, New York and upon information and belief may have an office and principal place of business located at 864 Burdeck Street, Schenectady, New York.  J. Luk is and was engaged in the real estate development and building business.

4.   Upon information and belief, defendant Hodorowski Homes, LLC., (hereinafter "Hodorowski Homes") was and is a domestic corporation authorized to do business pursuant to the Laws of the State of New York with an office mailing address as defined on the Company website as well as the NYS Department of State as being, 796 Burdeck Street, Schenectady, New York;

however upon information and belief may have an office and principal place of business located at 864 Burdeck Street, Schenectady, New York.  Hodorowski Homes is engaged in the real estate development and building business.

5.   Upon information and belief, defendant Francis J. Hodorowski, Sr. with residence at 1396 Giffords Church Road, Schenectady, New York, personally participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.  Francis J. Hodorowski, Sr. is engaged in the real estate development and building business of Hodorowski Homes.

6.   Upon information and belief, defendant Francis J. "Luke" Hodorowski, Jr. with a residence at 105 Pheasant Walk, Schenectady, New York personally participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.  Francis J. "Luke" Hodorowski, Jr. is engaged in the real estate development and building business of Hodorowski Homes.

3

7.   Upon information and belief, defendant Paul Hodorowski with residence at 1396 Giffords Church Road, Schenectady, New York, and/or at 105 Vly Point Drive, Schenectady, New York, personally participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.  Paul Hodorowski is engaged in the real estate development and building business at both Adirondack and Hodorowski Homes.

8.   Upon information and belief, defendant Coldwell Banker Prime Properties, Inc. (hereinafter "Coldwell") is a New York Corporation with an office and principal place of business located at 621 Columbia Street, Cohoes, New York, and participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct. Coldwell is engaged in the real estate, development and construction business.

9.   Upon information and belief, defendant Prime Companies LLC. (hereinafter "Prime") is a New York Corporation with an office and principal place of business located at 621 Columbia Street, Cohoes, New York and participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit

4

from that wrongful conduct.  Prime is engaged in the real estate, development and construction business.

10.  Upon information and belief, defendant Paragon Prime Funding (hereinafter "Paragon"), is a New York Corporation with an office and principal place of business located at 621 Columbia Street, Cohoes, New York and participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.  Paragon is engaged in the real estate, development and construction business.

11.  Upon information and belief, defendant Prime Land Companies (hereinafter "Prime"), is a New York Corporation with an office and principal place of business located at 621 Columbia Street, Cohoes, New York and participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.  Prime is engaged in the real estate, development and construction business.

12.  Upon information and belief, defendant Capital Closing Services, LLC (hereinafter "Capital"), is a New York Corporation with an office and principal place of business located at 621 Columbia Street, Cohoes, New York and participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit

from that wrongful conduct.  Capital is engaged in the real estate, development and construction business.

13.  Upon information and belief, defendant Kenneth Raymond, Jr. is an individual and, upon information and belief, the managing member and/or CEO and/or partner in Prime, Coldwell, Paragon, and Capital, understood to be New York Corporations and, upon information and belief, his principal offices and principal place of business is located at 621 Columbia Street, Cohoes, New York and resides at his personal residence located at 31 Schuyler Road Loudonville, New York, and who participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct.

14.  Upon information and belief, defendant John Kazmierczak an individual and, upon information and belief, the managing member and/or owner of Northstar Home Designs (hereinafter "Northstar"), and Creative Concepts Home Plan Services, LLC (hereinafter "Creative Concepts"), New York Corporations, upon information and belief with offices and principal places of business located at 35 Cherry Tree Lane, Gansevoort, New York 12831 and/or 394 Vischer Ferry Road, Clifton Park, New York, and who resides at 35 Cherry Tree Lane, Gansevoort, New York 12831 participated in and/or had the right and ability to direct and control the wrongful conduct alleged

6

in this Complaint and derived a direct financial benefit from
that wrongful conduct.  Mr. Kazmierczak is engaged in the
drafting of residential buildings for developers and
construction businesses.

15.  Upon information and belief, defendant Northstar is or
was a domestic corporations and/or authorized to do business
pursuant to the Laws of the State of New York with offices and
principal place of business at 35 Cherry Tree Lane, Gansevoort,
New York. Northstar is engaged in residential drafting, building
and remodeling services for building business.

16.  Upon information and belief, defendant Creative
Concepts is and was a domestic corporation and/or authorized to
do business pursuant to the Laws of the State of New York with
offices and principal place of business at 394 Vischer Ferry
Road, Clifton Park, New York, and/or at 35 Cherry Tree Lane,
Gansevoort, New York.  Creative Concepts is engaged in
residential drafting, and other services for building
businesses.

17.  Upon information and belief, defendant Steven Edward
Lamb an individual and, upon information and belief, a New York
State Licensed Professional Engineer, License number 046720,
and/or owner of Steve Lamb Engineering, a New York Professional
Corporation with an office and principal place of business
located at 22 Pine Hill Blvd, Ballston Lake, New York, and who

resides at 22 Pine Hill Blvd, Ballston Lake, New York and who participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct. Lamb is engaged in the structural engineering, drafting and permit submissions of drawings of residential buildings for developers and construction businesses.

## Nature of the Action

18. Plaintiff brings this action to seek redress for the infringement of its copyrights, and related unfair trade practices arising from theft and/or unauthorized use of architectural designs and plans for three projects; Admirals Walk Condominiums located in Cohoes, New York, Vly Pointe Condominiums located in Niskayuna, New York, and Jordan Point Town homes located in North Greenbush, New York. Plaintiff also sues for breach of contract and account stated based on services rendered but not paid for by the defendants for two of the three projects in this lawsuit under two separate contracts, Vly Point Condominiums (contract dated December 2004) and Admirals Walk Condominiums (contract dated March 2005).

## Jurisdiction and Venue

19. This Court has jurisdiction in this copyright infringement case pursuant to 28 U.S.C. §§ 1331 and 1338. The incorporated New York state law claims are so related to this

copyright and/or unfair competition claims that they form part of the same case or controversy. Therefore, this Court has supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(a).

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and personal jurisdiction over Defendants is proper and consistent with New York law.

**Facts Project Number 1**

**The Vly Road Condominium AKA Vly Pointe Condominiums, the --"Vly Pointe Project"**

21. On or about December 17, 2005, defendant Adirondack entered into an agreement with Ranieri (hereinafter "the Vly Road Agreement") for Ranieri to provide architectural designs, plans and services for a development known as Vly Pointe Condominiums (hereinafter, the " Vly Pointe Project" ). The Vly Pointe Project called for the creation of buildings and or a building that would consist of four (4) unit types assembled into one or two Building types depending on the final site design provided to Ranieri by the owner/developer.

22. Pursuant to the Vly Road Agreement, Ranieri's work on the Vly Point Project was divided into five phases: (I) Pre-Design; (II) Site Analysis; (III) Schematic Design; (IV) Design Development; (V) Construction Document; and (IV) Construction-Limited Administration of construction. The Vly Road Agreement also called for the provision of certain

9

Additional Services by Ranieri to be charged to Adirondack separately.

23.   Pursuant to the the Vly Road Agreement, Ranieri created designs, concepts, plans, pencil renditions, drawings, preliminary and final construction documents, specifications and related documents (collectively, the "Works") that resulted in the creation of preliminary and then actual architectural plans (hereinafter, the "Plans").

24.   It was the intention of the parties that Ranieri's Works and Plans would be used only for the Vly Pointe Condominiums Project and the fees where to paid in two basic parts; a "Base Design Fee" and a "Reuse Fee".

25.   The Base Design Fee provided for initial payments from the client for the base design fee of $67,360.00.

26.   The Reuse Fee (or dwelling unit fee as described in the Vly Pointe Agreement) was $62,240.00 which was to be paid proportionally pursuant to the number of units applied for at the time defendants applied for a permit for the construction of the Ranieri designed building at the site.  As each building permit was applied for, an additional fee per unit was to be paid by defendant Adirondack for every building calculated by the number of units within a particular building) in (hereinafter, the "Future Buildings").

10

27.   Based on the promise of the Future Buildings and future fees, Ranieri limited the fees on the initial Basic Services Fee.

28.   Other than in connection with the Future buildings (to be built out on the site over time) Ranieri's architectural services and the resulting Works and Plans were to be used solely with respect to the Vly Pointe Project and were provided solely for the benefit of defendant Adirondack after the full payments of all fees for such use and with agreement that the Works and Plans were and are not for the use or benefit of any other person.

29.   Pursuant to the Agreement and 17 U.S.C. § 201, Ranieri retains all right, title, and interest, including common law, statutory, and copyright to the Works and Plans.  Ranieri is thus the exclusive owner of the copyright in and to the Works and Plans.

30.   Pursuant to 17 U.S.C. §§ 410 and 411, Ranieri filed for copyright registration of the Plans on or about May 11, 2011.

31.   The Works and Plans are distinctive and proprietary because the Works and Plans:

    a.    are based on many hours of work by Ranieri;

    b.    were developed to incorporate open floor plans and
          modern design concepts within a buildable area of very
          specific geometry, without revealing the limits of the
          available space; and

11

c.   were developed over many months, and based upon early
20th century architecture, incorporating brickwork,
siding and trim elements, unique window,
configurations and specific roof and porch geometries,
trim and architectural details to create a Ranieri
design and feel that is predicated on traditional
scale and attention to proportions and massing that is
unique to Mr. Ranieri's artistic sense of design, the
look, feel, and aesthetics were carefully crafted
together by Mr. Ranieri, and to create a unique
condominium product for the particular demographic and
market found in the Albany area and to create a
distinctive living environment that is found only in
the Vly Pointe development project.

32.   The Vly Point Project commenced in or around October
2005.

33.   By virtue of the parties agreement, as in performance
there of, Ranieri transferred electronic and hard copies of the
Vly Works and Plans to defendant Adirondack on multiple
occasions through various stages of the progress of the project
as requested by Adirondack.

34.   Ranieri's work on the Works and the Plans effected,
among other services, the full performance of Phases I through
IV under the Vly Road Agreement.

35.   By May 2007, Adirondack had finished at least four
buildings on the Vly Pointe Project using Ranieri's Works and
Designs and called and marketed them as "Vly Pointe
Condominiums."

36.   Throughout the Vly Pointe Project Ranieri invoiced
defendant Adirondack for its work under the Vly Road Agreement.

37.   Despite defendant Adirondack's receipt of Ranieri's

12

services and invoices, Ranieri has not been paid in full.

38.   Moreover, and as described herein, Plaintiff, Ranieri
has recently discovered that Defendants have and are using the
Vly Works and Plans in connection with construction, sales and
marketing of buildings without Ranieri's approval, license or
permission.

### The Infringing Vly Pointe Buildings

39.   In April of 2007, the Defendants used Ranieri's Works
and Plans to complete two buildings and started work on two
additional buildings thought to be similar to Ranieri's original
designs, but still had not paid Ranieri in full. Thereafter,
Defendant John "Luke" Hodorowski expressed to Plaintiff, at a
billings meeting, that defendant Adirondack was not going to
honor the agreement and pay the dwelling unit/reuse fees as
described in the contract and which were agreed to by the
defendants at the on set of the project. Instead, defendants, in
breach of their contract with Ranieri, and with full knowledge
and blatant disregard to Ranieri's assertion of his copyrights
to the Works and Plans, communicated to Ranieri that they did
not intend to continue with future use of Ranieri's designs.

40.   Ranieri subsequently filed a Mechanics Lien on or
about August 2, 2007 on the project for payments owed for the
buildings constructed as of that date and sent cease and desist
letters to both Defendant Adirondack and the Town of Niskayuna

building department demanding the immediate stop of the use of Ranieri's copyrighted plans on any future buildings at the Vly Pointe project or any where else in the town.  In addition, Ranieri made such demands personally to both the defendant John "Luke" Hodorowski and the Building department - Head building Inspector at the Town of Niskayuna, New York.

41.  Prior to the breakdown of the parties' relationship, and as aforesaid, Ranieri transferred electronic and hard copies of some of Vly Works and Plans to Defendants through various stages of the progress of the project as requested by the Defendants.

42.  After said transfers, and after a meeting which was held on or around July 2008, between Ranieri and Defendant, John Luke Hodorowski Jr., to discuss the outstanding bills for the Vly Pointe Project and as to when Ranieri would be receiving payments for the buildings constructed at the project, Defendant, John Luke Hodorowski Jr. refused to make any further payments for the Permit and Reuse fees as agreed to in the contract.  Ranieri demanded that the defendants stop using Ranieri's plans and designs for any further buildings at the site since they were refusing to honor the agreement and refused to pay for the dwelling unit fees.  At that point Defendant John "Luke" Hodorowski Jr. stated that they were not using Ranieri's plans to build or permit any of the buildings in the project.

14

43.   In or about January of 2011, Ranieri learned that his Works and Plans had in fact been used by Defendants, and each of them, to develop, modify, construct, market and sell the majority of the residential project at the Vly Pointe Condominium Project site in the form of eight (8) buildings on the site (hereinafter, "the Infringing Vly Project") constituting sixty-four (64) dwelling units constructed as of the date of this lawsuit.

44.   Defendants were not authorized to use or copy or modify the Works or the Plans on or for the Infringing Project.

45.   Upon information and belief, Defendants hired Kazmierczak as their draftsman for the Infringing Project.

46.   Upon information and belief, Defendants hired Kazmierczak as their draftsman for the Infringing Project.

47.   Upon information and belief, Kazmierczak then hired Stephen Lamb as the Engineer of record for the infringing Project modified works to the copyrighted designs, plans and works of Ranieri.

48.   Upon information and belief, Defendants copied Ranieri's copyrighted plans and/or made unauthorized derivative works therefrom, at the direction of defendant Adirondack at various times throughout the project's development for use in connection with the Infringing Project.

49.   The plans, drawings, internal layout, massing and

overall look of the Infringing Project are nearly identical to the plans, drawings, internal layout, massing and overall look of the Works and Plans created by Ranieri for the Vly Pointe Project.

50.  The design and plans for the Infringing Project are identical an/or bear a substantial and striking similarity to the Works and Plans developed by Ranieri for the Vly Pointe Project because they are copies of the Works and Plans, and/or proximate derivations of the Works and Plans as further proved by large notations placed on the derivative works by the Defendants referring viewers of the plans back to Ranieri's original permitted drawings for further information and details for construction of the buildings.

51.  Upon information and belief, Defendants, and each of them, had access to the Copyrighted works and plans. Upon information and belief, Defendants, and each them, used this access to create the design, plans, and advertisements for the Infringing Project.

52.  Upon information and belief, Defendants, and each of them, have derived financial benefit from their aforementioned actions.

53.  Despite due demand, Defendants have failed to cease and desist from the aforementioned improper and infringing acts.

54.  Defendants' actions have and continue to infringe on

16

Ranieri's copyrights, and constitute unfair competition under both state and federal law.

### The Admirals Walk Condominium Project (Admirals Walk)

55.  On or about December 17, 2005, Adirondack entered into an agreement with Ranieri for the Admirals Walk Condominiums, ("Admirals Agreement") for Ranieri to provide architectural designs, plans and services for a development known as Admirals Walk Condominiums (hereinafter, the "Admirals Walk Project"). The Admirals Walk Project called for the creation of a ten (10) unit building that would consist of five (5) unique unit types assembled into a mirrored configuration to achieve one ten (10) unit building.

56.  Pursuant to the Admirals Agreement, Ranieri's work on the Admirals Walk Project was divided into four phases: (1) Schematic Design; (2) Design Development; (3) Construction Document; and (4) Construction Observation (as additional services only).  The Admirals Walk Agreement also called for other provisions of certain Additional Services by Ranieri to be charged to Adirondack separately.

57.  Pursuant to the Agreement, Ranieri created designs, concepts, plans, pencil renditions, drawings, preliminary and final construction documents, specifications and related documents (collectively, the "Works") that resulted in the creation of preliminary and then Permit architectural plans

(hereinafter, the "Plans").

58.   It was the intention of Ranieri and Adirondack that Ranieri's Works and Plans would be used only for the Admirals Walk Project and that the fees were to paid in two basic parts; a "Base Design Fee" and a "Reuse Fee."

59.   The Base Design Fee provided for initial payments from the client for the base design fee of $80,000.

60.   The Reuse Fee (or dwelling unit fee as described in the Admirals Walk Agreement) was $65,500, which was to be paid proportionally pursuant to the number of units applied for in each building permit and paid for at the time defendants applied for such a permit, for the construction of a Ranieri designed building at the site.   In order for defendant Adirondack to receive the license and authorization from Ranieri to utilize Ranieri's designs, this additional dwelling unit/ reuse fee (calculated by the number of units in the building) was to be paid by Adirondack for every building permitted using the Ranieri designs, (hereinafter, the "Future Buildings") prior to and or simultaneous to the permit submission.   For each "Future Building" Ranieri would receive additional compensation at a rate of $625.00 per unit.

61.   Other than in connection with the Future buildings (to be built out on the site over time), Ranieri's architectural services and the resulting Works and Plans were to be used

18

solely with respect to the Admirals Walk Project and were provided solely for the benefit of Adirondack after the full payments of all fees for such use, and were and are not for the use or benefit of any other person.

62.   Pursuant to the Admirals Walk Project Agreement, the Defendants had signed a contract with Ranieri and agreed to pay Ranieri a $65,500 dwelling unit fees to be paid as each building received a building permit, or building construction commenced. Full payment of the dwelling unit fees was due no later than twenty-four (24) months from the date of the contract and these fees were in addition to the base design fee of $80,000, plus additional fees as delineated in the agreement.

### The Infringing Admirals Walk Buildings

63.   Prior to the breakdown of the parties' relationship, and as aforesaid, Ranieri transferred electronic and hard copies of some of Admirals Walk Project Works and Plans to Adirondack through various stages of the progress of the project as requested by the Defendants.

64.   The Admirals Walk Project commenced construction in April of 2007 and by the time the first building had been completed there was one additional building being constructed that appeared to be similar to Ranieri's original designs.

65.   Pursuant to the Admirals Walk Project Agreement, Ranieri's Standard agreements with said clients and defendants,

19

and 17 U.S.C. § 201, Ranieri retained all copyrights and ownership in the Work's and Plans.

66.   After said transfers, and after a meeting which was held on or around April 4, 2007, between Plaintiff, and Defendant, Francis John "Luke" Hodorowski, to discuss the outstanding bills for the Admirals Walk Project, Defendants refused to make any payments for the Permit/Reuse fees as agreed to in the contract.  Ranieri demanded that defendants stop using Ranieri's Copyrighted Plans and designs for any further buildings at the site since defendants were terminating the agreement and refusing to pay the Dwelling unit fees. At that point Defendant, Francis John "Luke" Hodorowski then stated that Adirondack had not and were not going to use Ranieri's plans and designs (the Works) and they were not using Ranieri's plans to build or permit any of the buildings beyond the first building in the project.

67.   Therefore, as of April 4, 2007 when defendant, Francis John "Luke" Hodorowski, Jr. terminated the contract the subsequent license to use Plaintiff, Ranieri's designs and drawings (all architectural Works) was also terminated on this date.

68.   Despite Ranieri's agreeing to make the Works available for the Admirals Walk Project, and otherwise performing in full under the Admirals Walk Project Agreement, Defendants have not

20

paid Ranieri.

69.   Despite Defendants failure to pay Ranieri under the Admirals Walk Project Agreement, and without Ranieri's authorization, Defendants have nevertheless used and reused Ranieri's Works and Plans in violation of Ranieri's rights for financing, Attorney General (HOA) filings, sales, municipal approvals, construction, building plan modifications and advertising the Admirals Walk Project.

70.   Upon information and belief, Defendants, and each of them, have derived financial benefit from their aforementioned actions.

71.   Despite due demand, Defendants have failed to cease and desist from the aforementioned improper and infringing acts.

72.   Defendants' actions have and continue to infringe on Ranieri's copyrights, and constitute unfair competition under both state and federal law.

73.   Pursuant to the Admirals Walk Project Agreement, Ranieri's Standard agreements with said clients and defendants, and 17 U.S.C. § 201, Ranieri retained all copyrights and ownership in the Work's and Plans.

74.   Despite Ranieri's agreeing to make the Works available for the Admirals Walk Project, and otherwise performing in full under the Admirals Walk Project Agreement, Defendants have not paid Ranieri in full.

75. Despite defendants failure to pay Ranieri under the Admirals Walk Project Agreement, and without Ranieri's authorization, Defendants have nevertheless used and reused Ranieri's Works and Plans in violation of Ranieri's rights for financing, Attorney General (HOA) filings, sales, municipal approvals, construction, building plan modifications and advertising the Admirals Walk Project.

76. Upon information and belief, Defendants, and each of them, have derived financial benefit from their aforementioned actions.

77. Despite due demand, Defendants have failed to cease and desist from the aforementioned improper and infringing acts. Defendants' actions have and continue to infringe on Ranieri's copyrights, and constitute unfair competition under both state and federal law.

### The Jordan Pointe Town Home Project (Jordan Pointe)

78. Rather than pay Ranieri for the use of Town Homes designed by Ranieri for a project named Patroone Pointe in the Town of Rensselaer, New York, all defendants named in this suite took and used Ranieri's copyrighted designs for town homes and utilized them for land acquisition, municipal approvals for rezoning and or permitting of the property, development and construction of town homes, land and appraisal with such rezoning approvals, all while utilizing Ranieri's designs and

22

photographic images of previously constructed Ranieri town home buildings for financing of the development and subsequent building construction, marketing, and web sites for the defendants.

79.   Ranieri had previously designed town homes for the defendants at a previously completed project named Patroon Pointe in the town of Rensselaer, New York where the Defendants had a contract with Ranieri.   The Defendants had honored that original deal at the Partoon Pointe project and completed all or most of that project on or around 2006.

80.   On or about July 2010, Ranieri discovered an infringing Jordan project only by accident as he happened to come across the new site named Jordan Pointe in the Town of North Greenbush, New York.   Ranieri saw buildings completed and being constructed at the site and recognized them as being his designs. Upon further investigation and belief it was apparent that the builders and developers of this Jordan Pointe Project were his clients for the previous mentioned project as well as Vly Pointe and Admirals Walk projects.

81.   The buildings visually appeared to be identical and or strikingly similar to the ones designed in the Vly Works and Admirals Walk Works.   The marketing images and drawings available to visitors at the Jordan site were also identical or strikingly similar to Ranieri's original designs for the other

23

projects.

82.   Drawings submitted to the Town of North Greenbush, New York, bear defendant Adirondack's corporate logo, name and address with designation of copyrights as well as Defendant John Kazmierczak's name, and company name, Northstar Home.   The infringing Jordan drawings indicate that they were drawn for Adirondack specifically for Jordan Pointe.   Also affixed to these drawings was the signature and professional seal of defendant Stephen Edward Lamb, a New York State Licensed Engineer.

83.   By virtue of the above, Ranieri's rights have been are being infringed on by the actions of all of the Defendants.

84.   Upon information and belief, Defendants, and each of them, have derived financial benefit from their aforementioned actions.

85.   Despite due demand, Defendants have failed to cease and desist from the aforementioned improper and infringing acts.

86.   Defendants' actions have and continue to infringe on Ranieri's copyrights, and constitute unfair competition under both state and federal law.

<u>Count I - Copyright Infringement</u>

<u>(Admirals Walk Project - A Cause of Action
Against All Named Defendants)</u>

87.   Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through

24

86 inclusive.

88.   By virtue of the above, Defendants, and each of them, have violated Ranieri's exclusive copyright in and to the Plans of Admirals Walk, and have thus engaged in copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 501.

89.   Upon information and belief, the aforementioned acts of infringement on Ranieri's copyright in the Plans were willful, intentional and perpetrated in bad faith.

90.   By virtue of the above, Ranieri has been injured.

91.   The aforesaid acts of Defendants have caused and are causing great and irreparable damage to Ranieri and, unless permanently restrained by this Court, said irreparable injury will continue.

### Count II –Copyright Infringement

#### (Vly Pointe Project –A Cause of Action Against All Named Defendants)

92.   Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 91 inclusive.

93.   By virtue of the above, the defendants, and each of them, have violated Ranieri's exclusive copyright in and to the Plans of Vly Pointe for the Vly Pointe Project, and have thus engaged in copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 501.

94.  Upon information and belief, the aforementioned acts of infringement on Ranieri's copyright in the Plans were willful, intentional and perpetrated in bad faith.

95.  By virtue of the above, Ranieri has been injured.

96.  The aforesaid acts of the defendants have caused and are causing great and irreparable damage to Ranieri and, unless permanently restrained by this Court, said irreparable injury will continue.

### Count III - Copyright Infringement

#### (Jordan Pointe Project - A Cause of Action Against All Named Defendants)

97.  Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 96 inclusive.

98.  By virtue of the above, Defendants, and each of them, have violated Ranieri's exclusive copyright in and to the Plans of Jordan Pointe, and have thus engaged in copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 501.

99.  Upon information and belief, the aforementioned acts of infringement on Ranieri's copyright in the Plans were willful, intentional and perpetrated in bad faith.

100. By virtue of the above, Ranieri has been injured.

101. The aforesaid acts of Defendants have caused and are causing great and irreparable damage to Ranieri and, unless

26

permanently restrained by this Court, said irreparable injury will continue.

## Count IV – Contributory Copyright Infringement

### (A Cause of Action Against All Named Defendants)

102. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 101 inclusive.

103. Defendants, and each of them, knew of the aforementioned infringement of Ranieri's Works and copyrights.

104. By virtue of the above, Defendants, and each of them, have intentionally induced, encouraged and facilitated the aforementioned infringement of Ranieri's copyrights concerning the Works and Plans.

105. Defendants, and each of them, have profited from the aforementioned infringement of Ranieri's Works and copyrights in the Plans and have declined or failed to stop or limit same.

106. By virtue of the above, Ranieri has been damaged.

## Count V – Federal Unfair Competition, Lanham Act § 43 (A), 15 U.S.C. § 1125(A)

### (A Cause of Action Against All Named Defendants)

107. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 106 inclusive.

108. Upon information and belief, Defendants, and each of them, have taken Ranieri's Works and Plans and/or created

derivative works thereof, copied them with Ranieri's name removed Ranier's name, and subsequently affixed their own names, logos, and corporation symbols on the Copyrighted Works and Plans.

109. Upon information and belief, Defendants, and each of them, have and continue to falsely represent to others that they are the developers, owners and/or authors of the Works and Plans as counterfeited and/or copied for the Infringing Project.

110. The aforesaid activities of Defendants constitute the use of words, terms, names, symbols and devices and combinations thereof, false designations of origin and false and misleading representations of fact that are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection or association of Defendants with Ranieri, or as to the origin, sponsorship or approval of Defendants' goods, services, or other commercial activities by Ranieri.

111. The aforesaid activities of Defendants constitute the use of words, terms, names, symbols and devices and combinations thereof, false designations of origin and false and misleading representations of fact that in commercial advertising or promotion misrepresent the nature, characteristics or qualities of Defendants' goods, services or other commercial activities.

112. The aforesaid activities of Defendants constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

28

1125(a).

113. The aforesaid activities of Defendants have caused and are causing great and irreparable harm and damage to Ranieri and, unless permanently restrained by this Court, said irreparable injury will continue.

114. Upon information and belief, the acts of Defendants constitute a willful violation of 15 U.S.C. § 1125.

115. By virtue of the above, Ranieri has been damaged.

### Count VI – Breach of Contract – on the Vly Pointe Condominiums Project

(A Cause of Action Against All Named Defendants)

116. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 115 inclusive.

117. By virtue of the above Defendants were parties to binding contracts, specifically, the Vly Pointe and Admirals Walk Agreements.

118. By virtue of the above Defendants breached the Vly Pointe Condominiums Agreement.

119. By virtue of the above, Ranieri has been damaged.

### Count VII – Breach of Contract – Admirals Walk Condominiums Project

(A Cause of Action Against All Named Defendants)

120. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through

29

119 inclusive.

121. By virtue of the above Defendants were parties to a binding contract with Ranieri, specifically, the Admirals Walk Condominiums Project Agreement.

122. By virtue of the above Defendants breached the Admirals Walk Condominiums Agreement.

123. By virtue of the above, Ranieri has been damaged.

## Count VIII - Violation of NY Unfair Trade Practices Act

### (A Cause of Action Against All Named Defendants)

124. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 123 inclusive.

125. Defendants' aforementioned actions were unfair and unlawful acts as defined in New York State General Business Law Section 349 by virtue of Defendants', and each their, appropriating for their use both Ranieri's Works and Plans and, a fortiori, Ranieri's goodwill and reputation.

126. As a direct result and proximate result of Defendants' violations of the New York Unfair Trade Practices Act, Ranieri has been injured and suffered pecuniary loss.

## Count IX - Unjust Enrichment Against the Defendants

### (A Cause of Action Against All Named Defendants)

127. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through

126 inclusive.

128. Upon information and belief, all of the Defendants named in this lawsuit have benefitted from their aforementioned conduct.

129. All of the Defendants named in this lawsuit unjustly failed to pay Ranieri for this benefit and have unjustly retained the unauthorized copies of the Works.

130. By virtue of the above, Ranieri has been damaged.

<u>Count X - Conspiracy Against All Defendants</u>

131. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 130 inclusive.

132. Based on the aforesaid actions, Defendants, jointly and acting in concert, conspired and agreed to cooperate to intentionally and without justification interfere with the business relationship and expectancies between Ranieri and the Defendants herein.

133. Based on the aforesaid actions, Defendants, jointly and acting in concert, conspired and agreed to cooperate to use false designations of origin and false and misleading representations of fact to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Ranieri, or as to the origin, sponsorship or approval of Defendants' goods, services, or other commercial activities by

Ranieri.

134. Based on the aforesaid actions, Defendants, jointly and acting in concert, conspired and agreed to cooperate to use false designations or origin and false and misleading representations of fact that in commercial advertising or promotion misrepresent the nature, characteristics or qualities of Defendants' goods, services or other commercial activities.

135. Based on the aforesaid actions, Defendants, jointly and acting in concert, conspired and agreed to cooperate in unfair and deceptive acts and practices in the conduct of their trade and commerce.

136. Based on the aforesaid actions, Defendants, jointly and acting in concert, conspired and agreed to cooperate to unlawfully misappropriate and convert the Plans and marketing materials, including exterior designs, elevations, original artwork and floor plans and photographic images.

137. The aforementioned unlawful activities were conducted by Defendants pursuant to a scheme to achieve and in furtherance of the shared goal of creating the Infringing Project and financial benefit therefrom.

138. Ranieri has been damaged as a result of the conspiracy by and among Defendants to participate in and accomplish the aforementioned unlawful activities.

## Count XI - Interference with Business Relation/Contract

### (A Cause of Action Against Defendants, John Kazmierczak, John Luke Hodorwoski Jr., Paul C. Hodorwoski, Stephen Edward Lamb, Kenneth M. Raymond)

139. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 138 inclusive.

140. By virtue of the above, Ranieri had a protected interest under the Vly Pointe, Admirals Walk, and Patroon Pointe Agreements and to any related Future Work.

141. By virtue of the above, John Kazmierczak, John Luke Hodorwoski Jr., Paul C Hodorowski, Stephen Edward Lamb, Kenneth M Raymond and possibly others named in this law suit and not yet discovered, intentionally and maliciously interfered with Ranieri's business and contractual relationship with Adirondack knowing that said conduct was wrongful, and did so without justification or excuse.

142. By virtue of the above, a reasonable likelihood existed that the aforementioned conduct by the aforementioned defendants would cause loss of Ranieri's prospective gain under the Admirals Walk, Vly Pointe and Patroon Pointe Agreements.

143. By virtue of the above, Ranieri has been damaged.

## Count XII - Interference with Economic Advantage

### (A Cause of Action Against All Named Defendants)

144. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 143 inclusive.

145. By virtue of the above, Ranieri had a reasonable expectation of economic advantage through the completion of and full payment under the Admirals Walk, Vly Pointe and Patroon Pointe Agreements, and in the performance of Future Work derived from works authored by and of Ranieri.

146. By virtue of the above, the aforementioned defendants intentionally and maliciously interfered with Ranieri's expectation, knowing that said conduct was wrongful, and did so without justification or excuse.

147. By virtue of the above conduct by afore mentioned defendants, Ranieri lost prospective economic gain.

148. By virtue of the above, Ranieri has been damaged.

### Count XIII - Account Stated

### (A Cause of Action Against All Named Defendants)

149. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 148 inclusive.

150. Pursuant to the Admiral Walk, Vly Pointe and Patroon Pointe Agreements, Ranieri rendered statements of account to

34

Defendants, and Defendants, accepted these statements of account without protest.

151. Ranieri stated an account for the services rendered to Defendants by Ranieri, and on such statements a balance remains due and owing which Defendants have agreed to pay Ranieri.

152. By virtue of the above, an account has been stated.

153. Ranieri has suffered damages as a result of Defendants failure and refusal to pay the amounts due and owing on the accounts.

### Count XIV - Quantum Meruit

#### (A Cause of Action Against All Named Defendants)

154. Ranieri re-alleges and incorporates by this reference each and every allegation as set forth in Paragraphs 1 through 153 inclusive.

155. By virtue of the above, Ranieri diligently and faithfully rendered work and services to Defendants. Defendants accepted such work and services with the knowledge and understanding that Ranieri expected to be compensated.

156. The refusal by Defendants to pay Ranieri for work and services rendered is unjust, inequitable and unconscionable.

157. Ranieri has suffered damages as a result of Defendants' refusal to compensate Ranieri for work and services rendered.

158. Ranieri is entitled to be compensated for legal

35

services for work and services rendered pursuant to the doctrine
of quantum meruit.

WHEREFORE Plaintiffs demand the following relief:

A. Compensatory damages;

B.   Recovery of Ranieri's actual damages and Defendants'
     infringing profits after an accounting 17 U.S.C. §504;

C.   Statutory damages under 17 U.S.C. §4;

D.   Statutory punitive damages;

E.   Common law punitive damages;

F.   Attorneys' fees and costs under the Lanham Act and/or
     17 U.S.C. §505;

G.   The disgorgement and/or imposition of a constructive
     trust on Defendants' profits as derived from the
     aforementioned activities;

H.   Declaratory Relief under 28 U.S.C. § 2201 that
     Defendants' infringement of Ranieri's copyrights, and
     interference with Ranieri's business expectancy, and
     unfair competition warrants that Defendants, their
     agents, servants, employees, and all persons in active
     consort or participation with Defendants, be
     permanently enjoined and restrained from;

     i.   Using Ranieri's Plans Works as described above or
          any derivative work thereof;

     ii.  Otherwise infringing on Ranieri's copyrights;

        iii. Unfairly competing with Ranieri's in any manner whatsoever;

        iv. Causing likelihood of confusion, injury to the business reputation, or dilution of the distinctiveness of the Ranieri's Plans and Works.

I. Plaintiff requests further that:

        i. Defendants be directed to file with the Court and serve on Ranieri's within thirty (30) days after issuance of the injunction a report in writing and sworn to under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

        ii. Defendants be required to recall from all channels of trade, deliver upon and destroy all literature, advertisements, video tapes, technical drawings, pencil renditions, architectural plans and other materials constituting or embodying Ranieri's Plans and Works or derivative works thereof;

J. An amount sufficient to engage in corrective advertising program to dispel any false suggestion of a connection between Ranieri's and Defendants' activities as alleged herein and;

K. Such other relief as the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues in this action.

Dated: August 24, 2011

_____
Amanda Kuryluk
Bar Roll No.516864
THORN GERSHON TYMANN & BONANNI, LLP
Attorneys for Plaintiff
5 Wembley Court, P.O. Box 15054
Albany, New York 12212-5054
(518) 464-6770

38